**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| KBW INVESTMENT PROPERTIES, LLC | : | |
| | : | |
| v. | : | |
| | : | |
| ALEX AZAR, | : | Case No. 2020-cv- |
| IN HIS OFFICAL CAPACITY AS SECRETARY | : | |
| U.S. DEPARTMENT OF HEALTH AND | : | |
| HUMAN SERVICES | : | Judge |
| | : | |
| & | : | Magistrate |
| | : | |
| U.S. DEPARTMENT OF HEALTH AND | : | |
| HUMAN SERVICES | : | |
| | : | |
| & | : | |
| | : | |
| NINA B. WITKOFSKY, | : | |
| IN HER OFFICIAL CAPACITY AS ACTING | : | |
| CHIEF OF STAFF U.S. CENTERS FOR | : | |
| DISEASE CONTRACT AND PREVENSION | : | |
| | : | |
| & | : | |
| | : | |
| U.S. CENTERS FOR DISEASE CONTROL | : | |
| AND PREVENTION | : | |
| | : | |
| & | : | |
| | : | |
| FRANKLIN COUNTY, OHIO MUNICIPAL COURT | : | |
| C/O HONORABLE JARROD B. SKINNER, JUDGE | : | |
| | : | |
| & | : | |
| | : | |
| CASSANDRA KING | : | |

**COMPLAINT**

Now comes Plaintiff, KBW Investment Properties, LLC (hereinafter "Plaintiff"), by and

through the undersigned counsel of record, pursuant to all applicable Federal Rules of Civil

Procedure, and for its Complaint against Alex Azar, in his official capacity as Secretary of the U.S. Department of Health and Human Services, the U.S. Department of Health and Human Services (hereinafter collectively "HHS"), Nina B. Wikofsky, in her official capacity as acting Chief of Staff U.S. Centers for Disease Contract and Prevention, U.S. Centers for Disease Control and Prevention (hereinafter collectively "CDC"), the Franklin County, Ohio Municipal Court, c/o Honorable Jarrod B. Skinner, Judge, (hereinafter "FCMC"), and Cassandra King (hereinafter "King"), states as follows:

**PARTIES**

1. Plaintiff is an Ohio limited liability company that owns residential rental properties in Franklin, County, Ohio.

2. On or about February 1, 2020, Plaintiff rented a residential apartment home to King, a tenant at the address located at 2322 McGuffey Road, Columbus, Ohio 43211 (hereinafter "the Subject Premises").

3. February 2020 rent was paid by the Community Shelter Board.

4. King failed to pay rent for the months of March, April, May, June, July, August and September 2020.

5. King also failed to pay for water usage for her entire tenancy at the Subject Premises.

6. On or about August 13, 2020, after serving a statutory eviction notice pursuant to Ohio Revised Code § 1923.04, Plaintiff caused an eviction action to be filed in the Franklin County, Ohio Municipal Court, case number 2020 CVG 19567 (hereinafter "the Action").

7. On or about September 4, 2020 the CDC published a regulation in the Code of Federal Regulation 85 Fed. Reg. 5592 (Sept. 4, 2020), purportedly attempting to halt all residential evictions in the United States upon presentation by a tenant to a landlord of a Certification

created by the CDC certifying that the tenant has used best efforts to obtain government assistance, cannot pay all the rent due to COVID-19, and will be homeless unless the eviction is stopped.

8. On or about September 3, 2020 Plaintiff's members met King in the Columbus Convention Center to attend the eviction hearing scheduled for that date.

9. On or about September 3, 2020, Plaintiff's members offered to allow King to remain in the Subject Premises if she would apply for rental assistance with IMPACT, a community organization that has been allocated approximately 6 million dollars in CARES Act funds to appropriate to tenants who cannot pay their rent in Franklin County, Ohio.

10. IMPACT maintains an office at eviction court in Franklin County, Ohio currently located in the Columbus Convention Center.

11. Upon knowledge and belief, IMPACT has generally approved payment of all past due rent, fees, and costs associated with a default of a residential lease in order to avoid an eviction.

12. King elected not to enter into a repayment plan with Plaintiff and King did not apply for IMPACT funds.

13. Instead, King entered into an Agreed Entry to move from the Subject Premises.

14. A copy of the agreed court order wherein King agreed to move from the Subject Premises is attached hereto and labeled Exhibit "A".

15. King was supposed to move from the Subject Premises or be subject to an eviction and immediate set out on or before September 10, 2020.

16. On September 10, 2020, King filed a Motion to Stay Set Out with the Franklin County Municipal Court, attached hereto as Exhibit "B", and King filed a Declaration for CDC Temporary Halt in Evictions, attached hereto as Exhibit "C".

17. On or about September 14, 2020, without any notice, hearing or opportunity to respond to King's Motion to Stay the Set Out, Judge Jarrod B. Skinner of the Franklin County Municipal Court issued an Order staying the Set Out until apparently after the CDC regulation ceases to be in effect or December 31, 2020.

18. The Municipal Court's Order, attached hereto as Exhibit "D", requests that a Court of higher jurisdiction issue an opinion on the enforceability of the CDC Order.

19. FCMC wholly failed to evaluate the veracity of the CDC certification issued by King to the Court.

20. Plaintiff never received a copy of the CDC certification from King before the Municipal Court's Order was issued, it went directly to the Court.

21. FCMC and the CDC Order denied Plaintiff access to the Court after King had agreed to move out via agreed Court Order.

22. Defendant HHS is sued in an official capacity and as agency of the United States.

23. Defendant CDC is an agency within HHS and is responsible for the unconstitutional regulation being challenged in this case.

## JURISDICTION AND VENUE

24. This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331, as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.

25. This Court has authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. § 2201 and 2202.

26. Venue for this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b) because FCMC is in this jurisdiction and the decision giving rise to this case was made by FCMC in this jurisdiction.

**SUPPLEMENTAL FACTS**

27. Plaintiff owns residential rental properties in Franklin, County, Ohio.

28. On or about February 1, 2020, Plaintiff rented a residential apartment home to King for the Subject Premises pursuant to a lease agreement.

29. King moved into the Subject Premises on February 1, 2020.

30. Pursuant to the lease agreement, King is to pay $795.00 per month. Her rent is due on or before the first of each month.

31. Pursuant to the lease agreement, King is to pay for all utilities used at the Subject Premises, including water.

32. The Community Shelter Board, located in Franklin County, Ohio, paid King's February 2020 rent and her security deposit under the lease agreement.

33. King failed to pay rent timely for the month of March 2020.

34. King or someone on her behalf made a partial payment in the amount of $360.00 on March 11, 2020. No other payments have been paid by King or anyone on her behalf since said date.

35. King has now failed to pay rent for the months of March, April, May, June, July, August and September 2020.

36. King has also failed to pay for water usage for the months of February, March, April, May, June, July, August and September.

37. King has never offered Plaintiff any payments since March 11, 2020.

38. King has fallen behind on rent, and asserted to Plaintiff that she is unable to pay because of economic stress arising from the COVID-19 pandemic, has used best efforts to obtain available government assistance and otherwise pay rent, has no other home to go to, and is making less than $99,000.00 annually.

39. To date, King owes $6,037.93 in unpaid rent and utilities, and she has made no attempts to pay any amount since March 11, 2020.

40. On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, P.L. 116-316, which included in Section 4024 of the Act a limited and temporary moratorium on evictions for certain types of federally backed housing. Said moratorium expired on July 24, 2020.

41. On September 1, 2020 Defendant Acting Chief Witkofsky issued an order titled, "Temporary Halt Residential Evictions to Prevent Further Spread of COVID-19." ("the Order").

42. The Order went into effect when it was published in the Federal Register on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020), see https://www.federalregister.gov/documents/2020/09/04/2020-19654/temporary-halt-in-residential-evictions-to-prevent-the-further-spread-of-covid-19

43. The Order provided, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id.*

44. The Order is not effective so long as a local jurisdiction applied similar eviction restrictions. *Id.*

45. Ohio does not have similar eviction restrictions; therefore, the Order is effective.

46. The Order defines, "Evict" and "Eviction" as any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. *Id.* at 55296.

47. The Order states "[A] person violating this Order may be subject to a fine of no more than $1000,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both." *Id.*

48. The Order is in effect from September 4, 2020 through December 31, 2020, unless extended. *Id.* at 55297.

49. Plaintiff has followed all applicable laws in accordance with the lease agreement and Ohio Law.

50. On or about September 3, 2020 Plaintiff's members met King in the Columbus Convention Center to attend the eviction hearing scheduled for that date.

51. On or about September 3, 2020, Plaintiff's members offered to allow King to remain in the Subject Premises if she would apply for rental assistance with IMPACT, a community organization that has been allocated approximately 6 million dollars in CARES Act funds to appropriate to tenants who cannot pay their rent in Franklin County, Ohio.

52. IMPACT maintains an office at eviction court in Franklin County, Ohio currently located in the Columbus Convention Center.

53. Upon knowledge and belief, IMPACT has generally approved payment of all past due rent, fees, and costs associated with a default of a residential lease in order to avoid an eviction.

54. King elected not to enter into a repayment plan with Plaintiff and King did not apply for IMPACT funds.

55. Instead, King entered into an Agreed Entry to move from the Subject Premises.

56. A copy of the agreed court order wherein King agreed to move from the Subject Premises is attached hereto and labeled Exhibit "A".

57. King was supposed to move from the Subject Premises or be subject to an eviction and immediate set out on or before September 10, 2020.

58. On September 10, 2020, King filed a Motion to Stay Set Out with the Franklin County Municipal Court, attached hereto as Exhibit "B", and King filed a Declaration for CDC Temporary Halt in Evictions, attached hereto as Exhibit "C".

59. On or about September 14, 2020, without any notice, hearing or opportunity to respond to King's Motion to Stay the Set Out, Judge Jarrod B. Skinner of the Franklin County Municipal Court issued an Order staying the Set Out until apparently after the CDC regulation ceases to be in effect or December 31, 2020.

60. The Municipal Court's Order, attached hereto as Exhibit "D", requests that a Court of higher jurisdiction issue an opinion on the enforceability of the CDC regulation.

61. FCMC wholly failed to evaluate the veracity of the CDC certification issued by King to the Court.

62. Plaintiff never received a copy of the CDC certification from King before the Municipal Court's Order was issued, it went directly to the Court.

63. FCMC and the CDC Order denied Plaintiff access to the Court after King had agreed to move out via agreed Court Order.

64. Upon knowledge and belief King has lied, mislead, and omitted information when she signed the CDC declaration/certification.

65. Plaintiff has continued to provide a habitable property to King.

66. As a result of the Order, Plaintiff has suffered and continues to suffer significant economic damages; including but not limited to, King's unpaid balance of $6,037.93, monthly maintenance costs to provide a habitable unit, damages to its property, lost opportunity to rent and use the property at fair market value, and the local government's offer to rehabilitate the Subject Premises.

67. King is also insolvent, and Plaintiff will unlikely be able to obtain any economic relief or damages from King once the Order expires.

68. Plaintiff's sole ability to mitigate its damages is to evict King from the Premises, who is unlawfully detaining the Subject Premises from Plaintiff.

**COUNT I: UNLAWFUL AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(2)(B),(C)—CDC EXCEEDED ITS STATUTORY AND REGULATORY AUTHORITY BY ISSUING THE HALT IN RESIDENTIAL EVICTIONS ORDER.**

69. Plaintiff hereby incorporates by reference all of the preceding material as though fully set forth herein.

70. Under the Administrative Procedure Act, this Court is authorized to hold unlawful and set aside agency action, findings, and conclusions that it finds to be contrary to constitutional right or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. *See* 5 U.S.C. §§ 706(2)(B), (C).

71. The Order was purportedly issued under the authority of "Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2."

72. Under 42 U.S.C. § 264(a) the CDC may only "make and enforce such regulations" that "are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession" and "may provide for such inspection, fumigation, disinfection, sanitation,

pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary" to carry out and enforce such regulations.

73. Under 42 C.F.R. § 70.2, when the Director of the CDC "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession" the Director is authorized to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

74. The Order purports to restrict "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from "evict[ing] any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." 85 Fed. Reg. at 55292.

75. A "covered person" is "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating" certain information outlined in the Order. 85 Fed. Reg. at 55293; see also 85 Fed. Reg. at 55297 (CDC Declaration form).

76. The effective period of the Order is from September 4, 2020 through December 31, 2020. 85 Fed. Reg. at 55292.

77. The Order only applies to States, local, territorial, or tribal areas that do not have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.

78. The Order applies to Ohio.

79. The Order baldly states that Defendant Witkofsky "determined the temporary halt in evictions in this Order constitutes a reasonably necessary measure under 42 CFR 70.2 to prevent the further spread of COVID-19 throughout the United States." 85 Fed. Reg. at 55296. The Order further states that she "determined that measures by states, localities, or U.S. territories that do not meet or exceed these minimum protections [i.e., those that have residential eviction moratoria] are insufficient to prevent the interstate spread of COVID-19." 85 Fed. Reg. at 55296.

80. The Order does not identify or offer any analysis whatsoever about which States, local, territorial, or tribal areas have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.

47. Individuals or organizations that violate the Order are subject to criminal penalties, including fines and jail time. *See* 85 Fed. Reg. at 55296; *see also* 18 U.S.C. §§ 3559, 3571; 42 U.S.C. § 271; 42 C.F.R. § 70.18.

81. Agencies have no inherent power to make law. *See Loving v. United States*, 517 U.S. 748, 758 (1996) ("the lawmaking function belongs to Congress ... and may not be conveyed to another branch or entity."). This limitation is a constitutional barrier to an exercise of legislative power by the executive branch. Agencies have "no power to act ... unless and until

11

Congress confers power upon [them]." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

82. Nothing in the relevant statutes or regulations purports to give CDC the power or authority to issue an eviction-moratorium order.

83. Nothing in the relevant statutes or regulations purports to give CDC the power or authority to criminalize otherwise lawful behavior.

84. The Order was issued in excess of any statutory authority and is therefore invalid.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order, preliminary and permanent injunctive relief from the Order, and any other relief that may be appropriate, and any other relief that may be appropriate.

### COUNT II: VIOLATION OF THE RIGHT OF ACCESS TO COURTS UNDER THE U.S. CONSTITUTION—THE ORDER, THE CDC, AND FRANKLIN COUNTY MUNICIPAL COURT UNLAWFULLY DENIED PLAINTIFF ACCESS TO THE ONLY LAWFUL MEANS OF EVICTING A DELINQUENT TENANT

85. Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

86. The Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth and Fourteenth Amendment Due Process Clauses and the Fourteenth Amendment's Equal Protection Clause collectively provide a federal constitutional right of access to courts. *Christopher v. Harbury*, 536 U.S. 403, 415, 415 n. 12 (2002).

87. No state actor may systemically frustrate a plaintiff "in preparing and filing suits" by foreclosing a particular type of relief. *Id*. at 413.

88. An unlawful detainer action is a landlord's *sole* means of reacquiring possession of his residential property in Ohio.

89. On or about September 8, 2020 Plaintiff's members met King in the Columbus Convention Center to attend the eviction hearing scheduled for that date.

90. On or about September 8, 2020, Plaintiff's members offered to allow King to remain in the Subject Premises if she would apply for rental assistance with IMPACT, a community organization that has been allocated approximately 6 million dollars in CARES Act funds to appropriate to tenants who cannot pay their rent in Franklin County, Ohio.

91. IMPACT maintains an office at eviction court in Franklin County, Ohio currently located in the Columbus Convention Center.

92. Upon knowledge and belief, IMPACT has generally approved payment of all past due rent, fees, and costs associated with a default of a residential lease in order to avoid an eviction.

93. King elected not to enter into a repayment plan with Plaintiff and King did not apply for IMPACT funds.

94. Instead, King entered into an Agreed Entry to move from the Subject Premises.

95. A copy of the agreed court order wherein King agreed to move from the Subject Premises is attached hereto and labeled Exhibit "A".

96. King was supposed on move from the Subject Premises or be subject to an eviction and immediate set out on or before September 10, 2020.

97. On September 10, 2020, King filed a Motion to Stay Set Out with the Franklin County Municipal Court, attached hereto as Exhibit "B", and King filed a Declaration for CDC Temporary Halt in Evictions, attached hereto as Exhibit "C".

98. On or about September 14, 2020, without any notice, hearing or opportunity to respond to King's Motion to Stay the Set Out, Judge Jarrod B. Skinner of the Franklin County Municipal

Court issued an Order staying the Set Out until apparently after the CDC regulation ceases to be in effect or December 31, 2020.

99. The Municipal Court's Order, attached hereto as Exhibit "D", requests that a Court of higher jurisdiction issue an opinion on the enforceability of the CDC regulation.

100. The Municipal Court wholly failed to evaluate the veracity of the CDC certification issued by King to the Court.

101. Plaintiff never received a copy of the CDC certification from King before the Municipal Court's Order was issued, it went directly to the Court.

102. The Municipal Court and the CDC Order denied Plaintiff access to the Court after King had agreed to move out via agreed Court Order.

103. Upon knowledge and belief King has lied, mislead, and omitted information when she signed the CDC certification.

104. Plaintiff has continued to provide a habitable property to King.

105. As a result of the Order, Plaintiff has suffered and continues to suffer significant economic damages; including but not limited to, King's unpaid balance of $6,037.93, monthly maintenance costs to provide a habitable unit, damages to its property, lost opportunity to rent and use the property at fair market value.

106. By operation of the Order, Plaintiff is unable to obtain a writ of eviction pursuant to an eviction action where it was already granted judgment.

107. Plaintiff now has no ability to legally oust his tenant for nonpayment of rent.

WHEREFORE, Plaintiff demands judgment against CDC and FCMC invalidating CDC's eviction moratorium order, preliminary and permanent injunctive relief from the Order, and any other relief that may be appropriate, and any other relief that may be appropriate.

**COUNT III: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE—
THE CDC EVICTION-MORATORIUM ORDER CANNOT BE THE SUPREME
LAW OF THE LAND BECAUSE IT IS NOT A LAW ADOPTED PURSUANT TO
THE CONSTITUTION**

108.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

109.    Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

110.    The Supremacy Clause grants "supreme" status only to the "*Laws* of the United States." *Id.* (emphasis added).

111.    "[A]n agency literally has no power to act, let alone to pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *New York v. FERC*, 535 U.S. 1, 18 (2002).

112.    "[P]reemption takes place only when and if the agency is acting within the scope of its congressionally delegated authority." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

113.    The Supremacy Clause grants "supreme" status only to the "Laws of the United States which shall be made *in Pursuance thereof*," *i.e.* in pursuance of "This Constitution." U.S. Const. Art. VI, cl. 2 (emphasis added).

114.    The conditional nature of the Supremacy Clause accords supremacy to federal statutes or regulations made "in Pursuance of" the Constitution.

115. CDC has not identified any act of Congress that confers upon it the power to impose a halt on residential evictions.

116. CDC has not identified any act of Congress that shows it is acting within the scope of some congressionally delegated authority to impose eviction moratoriums across the United States.

117. Indeed, Section 4024 of the CARES Act, which imposed a temporary moratorium on certain evictions, contained no delegation of authority to any agency, much less CDC, and even then only applied to certain federally-backed housing.

118. The weaker the link between relevant federal statutes and CDC's eviction- moratorium order, the weaker is CDC's ability to invoke the Supremacy Clause to deprive Plaintiff of its right to state-court eviction process.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order, preliminary and permanent injunctive relief from the Order, and any other relief that may be appropriate, and any other relief that may be appropriate.

### COUNT IV: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE AND TENTH AMENDMENT—THE CDC EVICTION- MORATORIUM ORDER DOES NOT VALIDLY PREEMPT STATE LAW

119. Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

120. Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

121.    The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

122.    The relevant statute, 42 U.S.C. § 264(a), only authorizes CDC to make and enforce regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

123.    The relevant regulation, 42 C.F.R. § 70.2, also only authorizes CDC to "take measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

124.    Nothing in the relevant statutes or regulations purports to give CDC the authority to issue an eviction-moratorium order that preempts state landlord-tenant law.

125.    Nothing in the relevant statutes or regulations purports to give CDC the authority to preempt the Contracts Clause of Article I, Section 10 of the United States Constitution, the Contracts Clauses of the state constitutions, or otherwise preempt state law protecting from impairment the obligations of private contracts that are in force.

126.    Nothing in the relevant statutes or regulations gives CDC the authority to order a nationwide moratorium "to temporarily halt residential evictions to prevent the further spread of COVID-19," CDC Order, 85 Fed. Reg. at 55292, because CDC's authority is confined to undertaking measures providing for "inspection, fumigation, disinfection, sanitation, pest

extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 U.S.C. § 264(a); 42 C.F.R. § 70.2.

127.    Although "state laws can be pre-empted by federal regulations as well as by federal statutes," *Hillsborough County, Fla. v. Automated Medical Lab, Inc.*, 471 U.S. 707, 713 (1985), the relevant statute contains a savings clause, which states: "Nothing in this section or section 266 of this title, or the regulations promulgated under such sections, may be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States), except to the extent that such a provision conflicts with an exercise of Federal authority under this section or section 266 of this title." 42 U.S.C. § 264(e).

128.    The savings clause of 42 U.S.C. § 264(e) states that 42 U.S.C. § 264(a) and 42 C.F.R. § 70.2 cannot "be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States)." In other words, the CDC is statutorily expressly deauthorized from issuing orders such as the eviction-moratorium order that would supersede state landlord-tenant law, or state laws relating to non- impairment of contracts.

129.    The relevant state landlord-tenant laws and laws relating to non-impairment of contracts do not conflict with CDC's authority to regulate "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 U.S.C. § 264(a).

130.    Landlord-tenant law and law relating to non-impairment of contracts "has long been regarded as a virtually exclusive province of the States" under the Tenth Amendment upon which the federal government cannot intrude. *Sosna v. Iowa*, 419 U.S. 393, 404 (1975). The

CDC order displaces inherent state authority over residential evictions and therefore violates the Tenth Amendment.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction moratorium order, preliminary and permanent injunctive relief from the Order, and any other relief that may be appropriate, and any other relief that may be appropriate.

### COUNT V: VIOLATION OF U.S. CONSTITUTION'S TENTH AMENDMENT— THE CDC EVICTION-MORATORIUM ORDER UNCONSTITUTIONALLY COMMANDEERS STATE RESOURCES AND STATE OFFICERS TO ACHIEVE FEDERAL POLICY OBJECTVES OR EXECUTE FEDERAL LAWS

131. Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

132. The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

133. Under the Tenth Amendment and the anti-commandeering doctrine, CDC cannot commandeer state resources to achieve federal policy objectives or commandeer state officers to execute federal laws.

134. CDC's eviction-moratorium order impermissibly commandeers state courts and state officers to act as arms of CDC. CDC's eviction-moratorium order impermissibly commandeers state courts and state officers to apply, enforce, and implement an unconstitutional federal law. *New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S. 898 (1997).

135. CDC cannot order state courts and relevant state actors not to process summary evictions. A landlord, like Plaintiff, who relies on state process, runs the risk of a federal prosecution for doing so. Plaintiff runs the risk of being fined up to $250,000 and sentenced to one year in jail for invoking and utilizing relevant state laws. *See* CDC Order, 85 Fed. Reg. at 55296.

136. Neither Congress nor CDC can "compel the States to ... administer a federal regulatory program." *New York v. United States*, 504 U.S. at 188. Neither Congress nor CDC can "halt" pending or forthcoming state adjudicatory proceedings. CDC Order, 85 Fed. Reg. at 55296. Neither Congress nor CDC can modify state judicial processes by dictating that a declaration executed by a tenant shall be adequate proof or otherwise suffice to halt or suspend the judicial eviction action. *Id.* at 55292–93, 55297.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order, preliminary and permanent injunctive relief from the Order, and any other relief that may be appropriate, and any other relief that may be appropriate.

### COUNT VI: VIOLATION OF U.S. CONSTITUTION ART I, § 1—THE CDC ORDER IS AN INVALID EXERCISE OF LEGISLATIVE POWER

137. Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

138. Article I, § 1 of the U.S. Constitution states, "*All* legislative Powers herein granted shall be vested in a Congress of the United States." (Emphasis added.) The grant of "[a]ll legislative Powers" to Congress in the Vesting Clause means that Congress may not divest "powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. 1, 42-43 (1825).

139. Whether federal legislation effects a permissible or prohibited delegation of legislative powers—and thus violates the Article I, § 1 Vesting Clause—is determined based on whether the legislation provides "an intelligible principle" to which an administering agency is directed to conform when carrying out its functions under the legislation. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). If the law fails to provide a guiding principle of that sort

but instead delegates to the agency authority to establish its own policies, the legislation is invalid because it violates the Vesting Clause. *Id.*

140.   As interpreted by CDC, 42 U.S.C. § 264(a) fails to set forth any "intelligible principle" to which CDC is directed to conform. Citing § 264(a), the Order imposes a nationwide moratorium on residential evictions based on CDC's judgment that a moratorium is necessary to curb "the introduction, transmission, or spread of communicable diseases." But if that finding is sufficient to justify the moratorium, then § 264(a) imposes no discernible limits on CDC's regulatory authority.

141.   Alternatively, if § 264(a) supplies a sufficient intelligible principle under current interpretation, then the doctrine must be re-examined so as to adhere to the proper limits contained in the Vesting Clause of Article I, § 1.

142.   As interpreted by the Order, § 264(a) would also authorize CDC to prohibit all citizens from attending church services, assembling for the purpose of expressing their political views, or even leaving their own homes. It is debatable whether such measures could pass constitutional muster if adopted by Congress itself; but it is beyond dispute that such measures constitute the sorts of policy decisions that the Constitution reserves to Congress alone in its role as the Nation's exclusive repository of legislative power.

143.   Because § 264(a), as interpreted by CDC, fails to include an intelligible principle that imposes limits on CDC's alleged regulatory authority, § 264(a) violates the Article I, § 1 Vesting Clause and is thus invalid as applied.

144.   Because § 264(a) is unconstitutional as applied here, CDC lacks any statutory authority to adopt the Order.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order, preliminary and permanent injunctive relief from the Order, and any other relief that may be appropriate.

### COUNT VII: UNLAWFUL SUSPENSION OF LAW—NEITHER STATUTE NOR CONSTITUTION AUTHORIZES CDC TO WAIVE, DISPENSE WITH, OR SUSPEND STATE EVICTION LAWS

145.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

146.    Evictions are a function of the police power of the several states. *Cf. Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 247 (1922) (considering the New York legislature's authority to enact emergency housing laws under the state's police power). In Ohio, a landlord's rights and remedies upon a material breach of a rental agreement, including the right to an eviction and the recovery of possession based on nonpayment of rent, are governed by a comprehensive statutory scheme. *See* Oh. Rev. Code 1923.01 *et seq*.

147.    CDC's order purports to waive or suspend the duly enacted laws that govern evictions in the State of Ohio.

148.    CDC has no authority to waive, dispense with, or suspend duly enacted state laws; nor does the Executive Branch more generally. *See Matthews v. Zane's Lessee*, 9 U.S. 92, 98 (1809) (Marshall, C.J.) ("The president cannot dispense with the law, nor suspend its operation."); *Baker v. Carr*, 369 U.S. 186, 244 n.2 (1962) ("No tribunal or department in our system of governments ever can be lawfully authorized to dispense with the laws, like some of the tyrannical Stuarts, or to repeal, or abolish, or suspend the whole body of them[.]") (quoting *Luther v. Borden*, 48 U.S. 1, 69 (1849) (Woodbury, J., dissenting)).

149.     To the contrary, the United States Constitution forbids the Executive Branch from

suspending the law.

150.     The separation of powers enshrined in our Constitution prevents the suspension of law

through executive action, as it would effect a merger of the executive and legislative powers.

*See* Philip Hamburger, Nat'l Rev., *Are Health Care Waivers Unconstitutional?* (Feb. 8,

2011), *available* at https://www.nationalreview.com/2011/02/are-health-care-

waiversunconstitutional- philip-hamburger ("The power to dispense with the laws had no

place in a constitution that divided the active power of government into executive and

legislative powers."). Suspension of laws by the Executive Branch is "a power exercised not

through and under the law, but above it." *Id.*

151.     The Founder's placement of the Suspension Clause in Article I reflects that the U.S.

Constitution continued the English common-law tradition of vesting the suspension power

solely in the Legislative Branch. *See* Philip Hamburger, *Beyond Protection*, 109 COLUM. L.

REV. 1823, 1919 (2009); Amanda L. Tyler, *Habeas Corpus in Wartime: From the Tower of

London to Guantanamo Bay* (2017) (chronicling the original meaning of the Suspension

Clause). The limited exception for the suspension of habeas corpus "in Cases of Rebellion or

Invasion" when "the public Safety may require it" proves the more general rule that duly

enacted laws may not be suspended during an emergency that is neither a rebellion nor an

invasion, even by Congress. U.S. Cont., art. I, § 9, cl. 2.

152.     In contrast to the legislature's suspension authority, the executive "could not, even during

an emergency, seize property" or "constrain the natural liberty of persons who were within

the protection of the law, unless [the executive] had legislative authorization." Hamburger,

*Beyond Protection*, 109 COLUM. L. REV. at 1919.

153.    CDC has not identified any act of Congress that delegated authority to impose an eviction

moratorium across the United States. Section 264(a) authorizes CDC only to make and enforce

regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest

extermination, destruction of animals or articles found to be so infected or contaminated as to

be sources of dangerous infection to human beings, and other measures, as in his judgment

may be necessary."

154.    With no applicable grant of statutory authority to suspend laws, CDC has no authority to

do anything with respect to Ohio's comprehensive laws. *See Home Bldg & Loan Ass'n v.*

*Blaisdell*, 290 U.S. 398, 425 (1934) ("Emergency does not create power. Emergency does not

increase granted power or remove or diminish the restrictions imposed upon power granted

or reserved.").

155.    Because CDC could not lawfully waive the application of Ohio's laws governing

evictions, Oh. Rev. Code 1923.01 *et seq*., the Order is void *ab initio* and must fail.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-

moratorium order, preliminary and permanent injunctive relief from the Order, and any other

relief that may be appropriate, and any other relief that may be appropriate.

**COUNT VIII: VIOLATION OF 42 U.S.C. §1983: VIOLATION OF THE RIGHT OF
ACCESS TO COURTS UNDER THE U.S. CONSTITUTION—FCMC HAS
UNLAWFULLY DENIED PLAINTIFF ACCESS TO THE ONLY LAWFUL MEANS
OF EVICTING A DELINQUENT TENANT**

156.    Plaintiff incorporates by reference all of the preceding material as though fully set forth

herein.

157.    The Article IV Privileges and Immunities Clause, the First Amendment Petition Clause,

the Fifth and Fourteenth Amendment Due Process Clauses and the Fourteenth Amendment's

Equal Protection Clause collectively provide a federal constitutional right of access to courts. *Christopher v. Harbury*, 536 U.S. 403, 415, 415 n. 12 (2002).

158.    No state actor may systemically frustrate a plaintiff "in preparing and filing suits" by foreclosing a particular type of relief. *Id*. at 413.

159.    An unlawful detainer action is a landlord's *sole* means of reacquiring possession of his residential property in Ohio.

160.    On or about September 8, 2020 Plaintiff's members met King in the Columbus Convention Center to attend the eviction hearing scheduled for that date.

161.    On or about September 8, 2020, Plaintiff's members offered to allow King to remain in the Subject Premises if she would apply for rental assistance with IMPACT, a community organization that has been allocated approximately 6 million dollars in CARES Act funds to appropriate to tenants who cannot pay their rent in Franklin County, Ohio.

162.    IMPACT maintains an office at eviction court in Franklin County, Ohio currently located in the Columbus Convention Center.

163.    Upon knowledge and belief, IMPACT has generally approved payment of all past due rent, fees, and costs associated with a default of a residential lease in order to avoid an eviction.

164.    King elected not to enter into a repayment plan with Plaintiff and King did not apply for IMPACT funds.

165.    Instead, King entered into an Agreed Entry to move from the Subject Premises.

166.    A copy of the agreed court order wherein King agreed to move from the Subject Premises is attached hereto and labeled Exhibit "A".

167.    King was supposed to move from the Subject Premises or be subject to an eviction and immediate set out on or before September 10, 2020.

168.    On September 10, 2020, King filed a Motion to Stay Set Out with the Franklin County Municipal Court, attached hereto as Exhibit "B", and King filed a Declaration for CDC Temporary Halt in Evictions, attached hereto as Exhibit "C".

169.    On or about September 14, 2020, without any notice, hearing or opportunity to respond to King's Motion to Stay the Set Out, Judge Jarrod B. Skinner of the Franklin County Municipal Court issued an Order staying the Set Out until apparently after the CDC regulation ceases to be in effect or December 31, 2020.

170.    The Municipal Court's Order, attached hereto as Exhibit "D", requests that a Court of higher jurisdiction issue an opinion on the enforceability of the CDC regulation.

171.    The Municipal Court wholly failed to evaluate the veracity of the CDC certification issued by King to the Court.

172.    Plaintiff never received a copy of the CDC certification from King before the Municipal Court's Order was issued, it went directly to the Court.

173.    FCMC denied Plaintiff access to the Court after King had agreed to move out via agreed Court Order.

174.    Plaintiff has now suffered damages as a result.

WHEREFORE, Plaintiff demands judgment against FCMC for unlawfully denying it access to Court, preliminary and permanent injunctive relief from the Order, and any other relief that may be appropriate.

### COUNT IX: VIOLATION OF 28 U.S.C. §1746 AND PERJURY AGAINST KING FOR LYING, MISLEADING, AND OR OMMITTING INFORMATION ON CDC DECLARATION/CERTIFICATION

175.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

176.   King signed the CDC Declaration under penalty of perjury pursuant to 28 U.S.C. §1746.

177.   Upon knowledge and belief King lied, mislead, and or omitted information on the CDC declaration/certification.

178.   As a result of her actions, King has violated the provisions under 28 U.S.C. §1746.

179.   Additionally, Plaintiff has suffered damages as a result of King's false declaration.

**WHEREFORE**, Plaintiff hereby respectfully request the following:

a) Plaintiff demands judgment against CDC and FCMC invalidating CDC's eviction moratorium order and any other relief that may be appropriate;

b) Plaintiff demands judgment against FCMC for unlawfully denying it access to Court and any other relief that may be appropriate;

c) Plaintiff demands judgment against King for violation of 28 U.S.C. §1746 and any other relief that may be appropriate;

d) Plaintiff demands preliminary and permanent injunctive relief from Defendant, the Order and FCMC as requested in Exhibit E;

a) Plaintiff demands any other relief that may be appropriate including but not limited to its attorney fees, expenses, court costs.

Respectfully submitted,
Willis Law firm LLC

/s/ Dimitrios Hatzifotinos
William L. Willis, Jr. (0038537)
Dimitrios G. Hatzifotinos (0077751)
Michael K. Jameson (0096790)
Solomon J. Parini (0096794)
Clint B. Charnes (0082913)
1160 Goodale Boulevard
Grandview Heights, Ohio 43212
614-221-9450
614-324-0460 FAX
dhatzifotinos@willislawohio.com

*Attorneys for Plaintiff*